The **CREAMETTE COMPANY**, a Minnesota corporation, Appellant,

v.

Joseph **MERLINO**, a sole trader doing business as Major Italian Foods Company, Appellee.

No. 17262.

United States Court of Appeals
Ninth Circuit.

Jan. 29, 1962.

See also 9 Cir., 289 F.2d 569.

Arthur S. Caine, Minneapolis, Minn., and Fraser & Bogucki by Robert H. Fraser and Raymond A. Bogucki, Los Angeles, Cal., for appellants; Donald v. Bailey, Minneapolis, Minn., of counsel.

Edward Hilpert, Jr., Seattle, Wash., for appellee; Ferguson & Burdell, Seattle, Wash., of counsel.

Before POPE, JERTBERG and DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge.

The Creamette Company, plaintiff below and appellant here, sought to obtain an injunction and damages for trade-mark infringement and unfair competition. Relief was denied, and Creamette appeals. The court below had jurisdiction under 15 U.S.C.A. §§ 1114(1), 1116, 1117, 1121 (the Lanham Trade-Mark Act) and 28 U.S.C. § 1338, as well as under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291 and Rule 54 (b) F.R.Civ.P., 28 U.S.C.A.[1]

From the complaint, the suit appears to be based primarily upon a charge that defendant appellee Merlino was infringing Creamette's registered trade-mark "Creamettes", used on macaroni products, by using the unregistered mark "Majorette" on similar products. It is also charged that the use of "Majorette" infringes other marks of Creamette, and that its use in combination with certain words and designs also constitutes unfair competition. However, the court having found against Creamette on all issues, the principal claim here is, to quote from Creamette's brief, that it owns a " 'family' of trade-marks as applied to macaroni products, and * * * has an indisputable right to the exclusive use of the suffix ["ette" and "ettes" and "et"] on and in connection with macaroni products."

Creamette's business is principally in Minnesota (where it has its headquarters), Michigan, Wisconsin, the Dakotas and eastern Montana, (the "home" territory) with a smaller volume in several other states. Its business in Washington, Oregon, Idaho, California and Alaska is substantially smaller. In Washington, in 1959, its business was $20,000, having declined from a high point of $34,000 in 1954.

Merlino manufactures and sells macaroni products in Washington and adjoining states—Oregon, Alaska, California and, to a small extent, Idaho and Montana —under the unregistered name "Majorette". Its sales in this area are much larger than Creamette's.

1. Defendant Merlino sought damages under the Sherman Act. This claim has not been tried. Judgment under Creamette's complaint was entered under, and the court made the determination and direction required by, Rule 54(b).

We list here the marks claimed by Creamette, and certain data relating to them:

| Mark | First used by Creamette | Date Registered | Registration Number | Volume of business per year | Product | Area |
|---|---|---|---|---|---|---|
| La Grisette [2] | July 26, 1949 | Nov. 2, 1909 | 72,945 | $10.00 [5] | Spaghetti, vermicelli | Wis., N. D. |
| Creamettes | Aug. 12, 1912 | April 1, 1913 | 90,907 | over $5,000,000 | Macaroni [3] products | General, including Seattle |
| Sal-ets [2] | July 31, 1953 | Dec. 7, 1943 | 404,624 | $10.00 [5] | Elbow macaroni | Wis., N. D. |
| Juniorettes | July 26, 1949 | April 3, 1951 | 540,402 | $200,000 | Small macaroni rings for infants; twirl type macaroni | General, including Seattle |
| Kidettes | July 26, 1949 | Oct. 9, 1951 | 549,176 | $10.00 [5] | Small macaroni rings for infants | Wis., N. D. |
| Totettes | July 26, 1949 | Oct. 9, 1951 | 549,177 | $10.00 [5] | Same as Kidettes | Wis., N. D. |
| Creamette [4] | Aug. 1917 | June 16, 1953 | 576,129 | Not given (see Creamettes) | Macaroni items and other foods | General |
| Ettes | July 26, 1949 | Mar. 15, 1955 | 603,367 | $10.00 [5] | Macaroni food for infants | Not given |
| Eggonettes | July 10, 1952 | May 12, 1959 | 678,575 | $10.00 [5] | Egg noodles | Wis., N. D. |
| Dumplingettes | Aug. 13, 1943 | Mar. 22, 1960 | 695,101 | $10.00 [5] | Egg noodles | Wis., N. D. |
| Knudelettes or Knodelettes | | Not registered | | | Egg noodles | Wis., N. D. |
| Salad Ettes | | Not registered | | "Very small" | Ring type macaroni | Not given |
| Spagh-Ettes | | Not registered | | "Substantial" | Elbow spaghetti | Outside [6] |

2. Assigned to Creamette by others.

3. Macaroni products include macaroni, spaghetti, vermicelli, macaroni rings, macaroni shells, egg noodles and similar alimentary paste products that may differ as to form and name.

4. First use was on products other than macaroni. First macaroni use, 1927.

5. These were obviously sales of minimum quantities in adjoining states, solely to support trade-mark registration.

6. "Outside" is territory other than the states where Creamette does most of its business, called "home".

The court found all of the registered trade-marks valid. It also found that "Majorette" is not a colorable imitation of any of Creamette's trade-marks or trade names. (See 15 U.S.C.A. §§ 1114 (1) and 1127). § 1127 defines colorable imitation as "any mark which so resembles a registered mark as to be likely to cause confusion or mistake or to deceive purchasers." The court specifically found that there is no such resemblance or likelihood. The evidence fully supports the finding. We see no likelihood of confusion between "Cream" or any other of Creamette's prefixes and "Major". On the face of the words, the only common factor is the suffix "ettes". This is a well-known suffix, having several meanings. Webster defines it (2d Ed.) as: "A suffix used in French to form feminine diminutives, * * * found in English nouns of recent borrowing (cigarette, statuette), often with loss of the diminutive force (etiquette, serviette) * * * also added to words already in the language, often to form diminutives (wagonette, kitchenette) or feminine nouns with or without diminutive or playful quality (suffragette, farmerette). There is also a commercial use * * * to form names of imitation or substitutive material". Such words as "leatherette", "linenette", once widely used, come to mind. The suffix is so widely used, and with such a variety of meanings and purposes, that we certainly cannot hold, as a matter of law, that its attachment by Merlino to the word "major" in any way infringes any of the trade-marks or trade names of Creamette. If there is any resemblance, in sight, sound, or meaning, between "major" and any of Creamette's prefixes, we cannot find it. This is especially so when the word "majorette" has come, in recent years, to have a commonly accepted meaning of its own, as referring to the spangled young ladies who parade with bands. This word has a connotation quite different from the various words ending in "ette" or "et" or "ettes" used by Creamette.

The court also found against the claim of unfair competition. The claim is predicated upon the fact that Creamette has long used, on its packages, the mark "Creamettes", the head of a young woman in a chef's cap (also a registered mark) and the words "more tender" and "more delicious". Merlino uses, along with "Majorette", the words "tender", "delicious", and "enriched", not accompanied by Creamette's dangling comparative, and a prancing majorette. All that she has in common with Creamette's young woman is her sex. The actual packaging, in color, design, type-style, placing of the marks and words on the package itself, and even packaging material, are so different that we certainly cannot find palming off by Merlino as a matter of law. The evidence fully supports the court's finding that there was none in fact. (Sleeper Lounge Co. v. Bell Mfg. Co., 9 Cir., 1958, 253 F.2d 720; Quaker Oats Co. v. General Mills, Inc., 7 Cir., 1943, 134 F.2d 429.)

This brings us to the "family of trade-marks" claim. Here again, the court found against it. We think the finding fully supported, but we do not wish to be understood as saying that Creamette could ever, even by registering many marks ending in "ette" or "ettes" or "et" and actively promoting all of them, acquire the exclusive use of the suffix for macaroni products. That question is not presented by this record. We find nothing in the Lanham Act, which speaks throughout in terms of "a trademark" or "a mark" (15 U.S.C.A. § 1051 ff), and little in the authorities, to support Creamette's contentions. Here, it has made substantial use of only two of its many marks—"Creamettes" and "Creamette". To a much smaller extent, it has used "Juniorettes", and to an even lesser extent, "Spagh-Ettes". The actual use of the other marks is so minimal, and some of it so recent, as to make it clear that, at this stage, they cannot have achieved any significance whatever to the buying public. Nor does the registration of "ettes" as a trade-mark strengthen Creamette's position. As a separate word, "ettes" has an entirely different ap-

pearance and meaning from any of the registered words of which it is a part.

Creamette places much reliance on a "reaction survey" designed to show likelihood of confusion because of the common suffix. The insurmountable difficulty is that all of this evidence was received by the court and carefully considered, along with expert and other testimony tending to discredit the accuracy and value of the survey. The court decided that Creamette had failed to prove its case, and we cannot say that the findings are "clearly erroneous" (Rule 52(a) FRCP). On the contrary, they are supported by substantial evidence.

Some cases squint at the possibility of acquiring rights in a "family" of marks, but none has upheld such a claim under circumstances even remotely resembling those of this case. Such cases as there are held against such a claim. (See Burroughs Wellcome & Co. v. Mezger Pharmacal Co., Inc., 1955, 228 F.2d 243, 43 CCPA 703, suffix "fax"; Brown & Bigelow v. Eugene Dietzgen Co., 1953, 203 F.2d 764, 40 CCPA 901, prefix "redi"; Lauritzen & Company, Inc., v. Borden Company, 1956, 239 F.2d 405, 44 CCPA 720, suffix "lac"; Quaker Oats Co. v. General Mills, Inc., 7 Cir., 1943, 134 F.2d 429, suffix "ies"; Rohr Aircraft Corporation v. Rubber Teck, Inc., 9 Cir., 266 F.2d 613, suffix "o-seal"; Huntington National Mattress Co. v. Celanese Corp. of America, 1961, 127 U.S.P.Q. 428, final word "cloud"; cf. Green v. Ludford Fruit Products, Inc., D.C.Cal., 1941, 39 F.Supp. 985, appeal dismissed, 9 Cir., 126 F.2d 468; J. R. Wood & Sons, Inc. v. Reese Jewelry Corporation, 2 Cir., 1960, 278 F.2d 157.)

The suffix "ettes" (or "et" or "ette") is so widely used for a variety of products,[7] and is capable of being used with such an infinite variety of wholly dissimilar words, that we doubt if it could ever be exclusively appropriated as the distinguishing feature of a "family" of marks to be used on any line of goods. To hold that such a result has been accomplished by Creamette in this case would, in our opinion, be a perversion of the purposes of the Lanham Act.

Creamette's claim that Merlino intended to infringe or palm off is likewise met by contrary findings of the trial court, fully supported by the evidence.

The final claim is that Merlino is estopped from asserting that Majorettes does not infringe appellant's "-ettes" marks because in 1948, when Merlino had a one-quarter stock interest in, and was a director and officer of, Mission Macaroni Company, a corporation which competed with the Creamette Company in the Northwest, Creamette sued the Mission Company (but not Merlino) for its threatened use of the trade-mark "Missionettes", and the suit was terminated by a consent decree and an injunction against Mission's further use of "Missionettes". Merlino had knowledge of the suit and acquiesced in its settlement. But we find no basis here for any equitable estoppel. Not only were the parties and issues in the Mission case different from those in the principal case, but there is evidence showing that appellee had no active role in the settlement.

Creamette claims that the court erred in making its finding of non-infringement applicable generally without limitation of area, rather than restricting it to the area of Merlino's sales to this time. This was proper. (See Fairway Foods, Inc. v. Fairway Markets, Inc., 9 Cir., 1955, 227 F.2d 193; Dawn Donut Company, Inc. v. Hart's Food Stores, Inc., 2 Cir., 1959, 267 F.2d 358, 360.) We leave future problems to the future.

Affirmed.

---

**7.** There is in evidence a list of 50 registered marks using the suffix and applicable to various foods. Creamette itself uses "Creamette" on many non-macaroni grocery items.