Paper No. 18
TJQ

THIS DISPOSITION IS NOT
CITABLE AS PRECEDENT OF THE TTAB          OCT. 22, 98

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
_____

Trademark Trial and Appeal Board
_____

In re Central Sprinkler Company
_____

Serial No. 74/505,190
_____

Roberta Jacobs-Meadway, Jay K. Meadway and Michael L.
Lovitz of Panitch Schwarze Jacobs & Nadel for applicant.

Conrad W. Wong, Trademark Examining Attorney, Law Office
104 (Sidney I. Moskowitz, Managing Attorney).
_____

Before Simms, Quinn and Hairston, Administrative Trademark
Judges.

Opinion by Quinn, Administrative Trademark Judge:

An application has been filed by Central Sprinkler

Company to register on the Supplemental Register the mark

ATTIC for "automatic sprinklers for fire protection."[1]

The Trademark Examining Attorney has refused

registration on the Supplemental Register on the ground

_____

[1] Application Serial No. 74/505,190, filed March 25, 1994,
alleging a bona fide intention to use the mark in commerce.
Applicant subsequently submitted an amendment to allege use which

that the matter sought to be registered is generic, and thus incapable of distinguishing applicant's goods from the goods of others.

When the refusal was made final, applicant appealed. Applicant and the Examining Attorney submitted briefs.[2]

The issue on appeal is whether the term ATTIC is generic, merely descriptive, or just suggestive when applied to applicant's automatic sprinklers for fire protection.[3]  In urging that the refusal be reversed,

---

sets forth a date of first use of September 21, 1994, and a date of first use in interstate commerce of October 27, 1994.

[2] Attached to applicant's appeal brief are additional third-party registrations which previously had not been made of record.  The Examining Attorney, in his brief, objected to this new evidence. The objection is well taken.  Trademark Rule 2.142(d).  Although in its brief applicant suggested a suspension and remand to allow the Examining Attorney to consider the additional registrations, it is clear that this evidence could have been submitted much earlier in the prosecution.  Accordingly, the third-party registrations attached to the brief are not of record and, thus, have not been considered.  The Board hastens to add that, in any event, this evidence, even if considered, would not compel a different result in this case.

[3] As a preliminary matter, we note that applicant, subsequent to the amendment to the Supplemental Register, has, at times, continued to argue that the mark is inherently distinctive (conceding only suggestiveness) and, accordingly, is registrable on the Principal Register.  A review of the file shows that applicant, in making the amendment to the Supplemental Register in a response filed March 9, 1995, did not characterize or otherwise indicate in any fashion that the amendment was an alternative one.  See: *Trademark Manual of Examining Procedure*, § 1212.02(c).  In a response filed on November 24, 1995, applicant again did not give any indication that the amendment to the Supplemental Register was made only as an alternative in the event that the mark was found not inherently distinctive.  In that response, applicant stated that "the only issue in the instant case is whether 'ATTIC' is capable of identifying source and distinguishing Applicant's goods from those of others" (p. 2), and then went on to argue why the term is not generic.  The

applicant argues that the Examining Attorney has not

sustained the Office's burden of proof.  Applicant's

position is that the mark is not even merely descriptive,

let alone generic.  Applicant contends that the category of

goods at issue here is "fire extinguishing equipment" or

"sprinklers for extinguishing fire", and that there is no

evidence that the relevant public refers to this category

of goods as "ATTIC."  Applicant further contends that while

the term "attic" may be generic for a room directly beneath

---

Examining Attorney, in his final refusal dated February 21, 1996, asserted that he "makes final the refusal to register the mark on both the Principal and Supplemental Registers on the grounds that the mark is descriptive of the goods, and generic so as to be incapable of serving in a source recognition capacity."  The Examining Attorney then issued a supplemental Office action, attempting to clarify the statutory basis for refusal.  It was not until applicant's request for reconsideration, filed on December 6, 1996, that applicant stated, for what appears to be the first time, that the amendment to the Supplemental Register was made in the alternative.  In that response, applicant argued that the mark sought to be registered is not even merely descriptive, let alone generic.  In denying the request for reconsideration, the Examining Attorney reiterated the refusal on both registers.  Applicant continued this tack in its appeal brief, contending that the term ATTIC is only suggestive, but going on to argue, in the alternative, that if the term were found to be descriptive, the term is not generic and, therefore, registrable on the Supplemental Register.

It is not at all clear that applicant's amendment to the Supplemental Register, filed March 9, 1995, was an alternative one.  In fact, the Board's view is that the amendment was not, and that it was only after the Examining Attorney refused registration on both registers (for reasons unknown to the Board) that applicant sought to argue in the alternative.  Nonetheless, in order to avoid any prejudice to applicant's right to registration, the Board will consider registrability on both the Principal and Supplemental Registers.  In the future, however, Examining Attorneys are urged to follow the guidelines for handling alternative amendments as set forth in Section 1212.02(c) of the *Trademark Manual of Examining Procedure*.

3

the roof of a house, the term is not generic for a sprinkler that may be placed in an attic.  According to applicant, "the fact that Applicant's sprinklers may be used in attics does not, per se, establish genericy [sic] of 'ATTIC' under the applicable authority", citing to In re Seats, Inc., 757 F.2d 274, 225 USPQ 364 (Fed. Cir. 1985), and In re Sentry Chemical Co., 230 USPQ 556 (TTAB 1986). In support of its arguments, applicant submitted the following materials:  a single page of printed literature about applicant's goods; a photocopy of one of applicant's sprinkler heads bearing the mark; third-party registrations and excerpts from the *Official Gazette*; information retrieved from the Internet; a declaration of George Meyer, applicant's president; and a declaration, with exhibits, of a paralegal employed by the law firm representing applicant in this appeal.

The Examining Attorney maintains that the matter sought to be registered is generic, naming a category of sprinklers that are used in attics.  In support of the refusal, the Examining Attorney submitted excerpts from printed publications retrieved from the NEXIS database; third-party registrations; and a dictionary listing of the term "attic."  As a fallback position, the Examining Attorney maintains that if ATTIC is not generic, then the

4

mark is at least merely descriptive and, thus, registrable only on the Supplemental Register at this time.

With respect to genericness, the Office has the burden of proving this refusal with "clear evidence" of genericness.  In re Merrill, Lynch, Pierce, Fenner & Smith, Inc., 828 F.2d 1567, 4 USPQ2d 1141, 1143 (Fed. Cir. 1987). Evidence of the relevant public's perception of a term may be acquired from any competent source, including newspapers, magazines, dictionaries, catalogs and other publications.  In re Leatherman Tool Group, Inc., 32 USPQ2d 1443, 1449 (TTAB 1994), citing In re Northland Aluminum Products, Inc., 777 F.2d 1566, 227 USPQ 961, 963 (Fed. Cir. 1985).

We now turn to look more specifically at the evidence of record which, of course, governs our determination herein.  The dictionary definition of record shows that the term "attic" means "a story or room directly beneath the roof of a house."

The Examining Attorney also introduced numerous excerpts from printed publications retrieved from the NEXIS database.  The excerpts show that automatic sprinklers for fire protection are used in attics.  (See, for example: "The village also will install a basic fire sprinkler pipe and sprinklers in the attic...."; and "....the full

requirements of NFPA 13, which generally involve the use of standard sprinklers in all attics....")  Further, the National Fire Protection Association, Inc.'s "Standard for the Installation of Sprinkler Systems" (1996 ed.) indicates that "sprinklers....in an unventilated attic shall be of the intermediate temperature classification."  This publication goes on to set forth particular installation concerns for sprinklers placed immediately below roofs.  As pointed out by applicant, none of the articles refers to the sprinklers as "attic sprinklers."  Rather, the products simply are called "sprinklers."

The Examining Attorney's evidence also includes four third-party registrations of marks containing the word "attic" for ventilators.  In each instance, there is either a disclaimer of the word "attic" or the mark issued on the Supplemental Register.

The Examining Attorney further points to applicant's one page of informational literature that was submitted pursuant to the Examining Attorney's request.  The page addresses the sprinkler placement problems presented by obstructions in attics, indicating that "[o]bstructions to Attic Sprinklers™ differ from standard sprinklers and the following criteria shall be used....There can be up to a 6 [inches] obstruction, measured vertically, as long as it is

6

36 [inches], measured vertically, below the Attic Sprinkler."

Applicant countered with evidence of its own, including the declaration of its president. Mr. Meyer asserts, in pertinent part, as follows:

> I know of no company other than [applicant] which uses 'ATTIC' as a mark for sprinklers. The type of sprinkler sold by [applicant] under the 'ATTIC' trademark is sold by others in the industry [naming five others]. To my knowledge, no company, other than [applicant], uses 'attic' to identify or describe any sprinkler product. There is, in my opinion and experience, no reason for any company to use 'ATTIC' to identify a sprinkler.

Also of record is the declaration of Dana Yost Hartman, a paralegal at the law firm representing applicant. Ms. Hartman asserts that she conducted a search of the *Thomas Register* and that there are not any businesses using the term "attic" for or in relation to sprinklers. The search also revealed that only one business used the term "attic" as part of its business name (Hollywood Disappearing Attic Stair Co., Inc.).

Applicant submitted material retrieved from what looks like the Internet Web page for the National Fire Sprinkler Association. The material lists manufacturers which are members of the association, including applicant. Applicant

7

relies on a listing, which appears at this Web site, of products of one of its competitors (Reliable Automatic Sprinkler Company), claiming that the material shows "that terms other than 'ATTIC' are used for sprinkler products similar to Applicant's" and that, therefore, there is no competitive need to use the term "attic" in the trade.

Applicant further submitted six third-party registrations and two excerpts from the *Official Gazette*. All of the referenced marks include a term (not disclaimed) indicating a place in which the identified goods may be used or situated (as, for example, CLOSET CADDY for a hanging closet-storage device, and PATIO I for outdoor gas grills). Applicant contends that the refusal to register its mark is inconsistent with the Office's practice concerning similarly constructed marks.

The critical issue in genericness cases such as this one is whether members of the relevant public primarily use or understand the term sought to be registered to refer to the genus (category or class) of goods in question. H. Marvin Ginn Corporation v. International Association of Fire Chiefs, Inc., 782 F.2d 987, 228 USPQ 528, 530 (Fed. Cir. 1986). However, as the Board recently observed in In re Boston Beer Co. L.P., 47 USPQ2d 1914, 1920 (TTAB 1998) (citing to the *H. Marvin Ginn Corp.* case), "in most cases

involving trademarks, it is difficult to postulate a general rule that will uniformly yield the correct result." The Board went on to state that "our determinations must be made on a case-by-case basis in light of the particular designation for which registration is sought and the record in the application which is under consideration." Id.

The broad general category of goods involved here is sprinklers for fire protection. However, a product may be in more than one category, and here applicant's goods also fall within the narrower category of sprinklers for fire protection of attics. We find that the term "attic" would be understood by the relevant public as referring to that category of goods. Remington Products Inc. v. North American Philips Corp., 892 F.2d 1576, 13 USPQ2d 1444, 1449 (Fed. Cir. 1990).

In the present case, applicant readily admits that its sprinklers may be used in the attic; but, according to applicant, the sprinklers also may be used in other locations. Aside from the fact that this statement is not supported by any evidence of record, that applicant's sprinklers may be used in other locations of a structure does not compel a different result here. The simple fact is that the only evidence of record (that is, the one page of product literature) relating to applicant's particular

9

sprinklers indicates that the sprinklers at issue are for placement and use in one place, that is, in the attic. Neither applicant's literature nor the specimen indicates that the sprinklers are used anywhere else other than in an attic. Indeed, it seems rather odd, at least to us, that a sprinkler marketed under the term ATTIC would be purchased for placement in a kitchen or bedroom. Upon encountering the term ATTIC for sprinklers, the relevant public surely would understand the term primarily to refer to a sprinkler for the attic, that is, an "attic sprinkler."

The third-party registrations submitted by applicant and the Examining Attorney are of limited relevance. Each case must be decided on its own set of facts, and the referenced marks are different from the one involved here and, moreover, cover goods different from sprinklers. We are not privy to the records of the prior registrations and, in any event, the instant record contains sufficient evidence to support a finding of genericness.

In reaching our decision, we cannot overlook how the relevant public will encounter the matter sought to be registered. Applicant's specimen, which is a label, is reproduced below.

Such use of ATTIC, at least to our eyes, is more in the nature of a type of sprinkler than of a source identifier. Further, the one page of applicant's literature is reproduced below.

The specimen and product literature present here serve
to distinguish this case from the one heavily relied upon
by applicant, In re Sentry Chemical Co., supra [HOSPICE for
an odor neutralizing spray held not merely descriptive].
In that case, the Board made a point that there was no
reference to the word "hospice" in either the specimens of
record or the product literature.  Here, however, both the
specimens and the product literature would seem to
indicate, as shown above, that applicant's particular
sprinklers are designed for use in attics.

Also, as shown in the product literature, the term "attic" appears twice, once in "Attic Sprinklers™" and the other in "the Attic Sprinkler." Certainly, under the type of analysis in which the Court engaged in the case of In re Gould Paper Corp., 834 F.2d 1017, 5 USPQ2d 1110 (Fed. Cir. 1987) [the term SCREENWIPE is generic for pre-moistened, anti-static cloth for cleaning computer and television screens], the term "attic sprinkler" for sprinklers used in an attic would be generic. That is to say, the separate words "attic" and "sprinkler" joined to form a compound "attic sprinkler" have a meaning identical to the meaning common usage would ascribe to those words as a compound. The fact that applicant has chosen to not include the term "sprinkler" in the mark sought to be registered should not lead to the registrability of ATTIC standing alone. The simple fact is that ATTIC, when applied to sprinklers for use in an attic, "immediately and unequivocally describes the purpose, function and nature of the goods." In re Gould Paper Corp., <u>supra</u> at 1112.

In reaching our decision, we readily acknowledge the sometimes-used distinction that generic names are nouns and descriptive terms are adjectives. 2 J.T. McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 12:10 (4th ed. 1997) ["A rule of thumb sometimes forwarded as

13

distinguishing a generic name from a descriptive term is that generic names are nouns and descriptive terms are adjectives. However, this "part of speech" test does not accurately describe the case law results."]. Here, we recognize that applicant's mark does not present the classic case of a generic noun, but rather a generic adjective. In this case, because the term ATTIC directly names the most important or central aspect or purpose of applicant's goods, that is, that the sprinklers are used in attics, this term is generic and should be freely available for use by competitors. See: In re Northland Aluminum Products, Inc., supra [BUNDT for coffee cake held generic]; In re Sun Oil Co., 426 F.2d 401, 165 USPQ 718 (CCPA 1970) [CUSTOMBLENDED for gasoline held generic because category of gasoline was blended personally for the motorist]; In re Helena Rubinstein, Inc., 410 F.2d 438, 161 USPQ 606 (CCPA 1969) [PASTEURIZED for face cream held generic]; In re Preformed Line Products Co., 323 F.2d 1007, 139 USPQ 271 (CCPA 1963) [PREFORMED for preformed electrical equipment held generic]; Roselux Chemical Co., Inc. v. Parsons Ammonia Co., Inc., 299 F.2d 855, 132 USPQ 627 (CCPA 1962) [SUDSY for aqua ammonia containing a synthetic detergent held generic]; Servo Corp. of America v. Servo-Tek Products Co., 289 F.2d 955, 129 USPQ 352 (CCPA 1961) [SERVO for

14

servomechanisms held generic]; J. Kohnstam, Ltd. v. Louis Mark & Co., 280 F.2d 437, 126 USPQ 362 (CCPA 1960) [MATCHBOX for toy vehicles held generic because that category of toy cars was sold in matchbox-sized boxes]; In re Pennzoil Products Co., 20 USPQ2d 1753 (TTAB 1991) [MULTI-VIS for multiple viscosity motor oil held generic]; In re Reckitt & Colman, North America Inc., 18 USPQ2d 1389 (TTAB 1991) [PERMA PRESS for soil and stain removers held generic]; In re National Patent Development Corp., 231 USPQ 823 (TTAB 1986) [ULTRA PURE for biological interferons for medical use held generic]; Fluid Energy Processing & Equipment Co. v. Fluid Energy, Inc., 212 USPQ 28 (TTAB 1981) [FLUID ENERGY for hydraulic/pneumatic equipment held generic]; Copperweld Corp. v. Arcair Co., 200 USPQ 470 (TTAB 1978) [COPPERCLAD for copper-coated carbon electrodes held generic]; In re Demos, 172 USPQ 408 (TTAB 1971) [CHAMPAGNE for salad dressing held unregistrable]; and Ethicon, Inc. v. Deknatel, Inc., 183 USPQ 503 (TTAB 1963) [COTTONY for sutures held generic].

We agree with the Examining Attorney that if a purchaser were seeking to buy sprinklers for an attic, it would be reasonable to refer to such products as "attic" sprinklers. The fact that applicant may be the first or the only one using ATTIC in connection with sprinklers is

15

not dispositive.  Southwire Co. v. Kaiser Aluminum & Chemical Corp., 196 USPQ 566, 572 (TTAB 1977).

Accordingly, we find that the asserted mark is generic and, thus, not registrable on the Supplemental Register.

For the sake of completeness, and to avoid any possible prejudice to applicant, we now turn to the issue of mere descriptivenss.  (see n. 3, supra)  As often stated, genericness is the ultimate in descriptiveness.  H. Marvin Ginn Corp., supra at 530.  But in the event that our finding of genericness is reversed in any appeal, we offer our view on the issue of mere descriptiveness of applicant's mark.

Applicant argues that the asserted mark just suggests that its sprinklers "are intended for installation above a living or work space, but below the roof."  We are not persuaded by this argument.  We have no doubt that the mark ATTIC is merely descriptive when applied to automatic sprinklers for fire protection.  That is to say, we find that the mark ATTIC immediately describes a significant characteristic of the goods, that is, that the sprinklers are for use in attics.  In re Abcor Development Corp., 616 F.2d 525, 200 USPQ 215 (CCPA 1978).

Decision:  The refusal to register is affirmed.



R. L. Simms


T. J. Quinn


P. T. Hairston
Administrative Trademark
Judges, Trademark Trial
and Appeal Board

**Ser No.** 74/505,190